UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DONALD HUNTINGTON, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 2:23-cv-00181-JPH-MJD |
| VANIHEL, | ) ) ) |
| Respondent. | ) ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Donald Huntington's petition for a writ of habeas corpus challenges a prison disciplinary proceeding. For the reasons explained in this Order, Mr. Huntington's habeas petition must be **denied**.

**A.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

1

### B.     The Disciplinary Proceeding

On January 5, 2023, Sergeant Yarber wrote a conduct report charging Mr. Huntington with possessing an intoxicating substance, a violation of B-231. Dkt. 9-1. The conduct report stated:

> On 01/05/2023, at approximately 8:42 AM, a cell search was conducted on PHU 303 due to a strong odor of rotten fruit and alcohol emanating from within this cell area. During the performance of this cell search, a clear plastic trash bag filled with approximately 10 gallons of a red-ish orange liquid, smelling strongly of alcohol and fermented fruit, was discovered within a property box, hidden underneath the lower bunk. With my time and personal experience as a Correctional Professional of Wabash Valley Corrections Facility, I do know this liquid to be a purposely manufactured intoxicant, created with the intent of being consumed as an alcoholic beverage. Incarcerated Individual Huntington, Donald (DOC #885774 / PHU #303L) and Orange, Allen (DOC #1178542 / PHU #303U) are both currently assigned to this living area.

*Id.* Pictures were taken, and the liquids were disposed. Dkt. 9-2 at 2–3. Sergeant Yarber also completed a notice of confiscation form. *Id.* at 2. Sergeant E. Luken, who also conducted the search, gave the following statement:

> On 1-5-2023 at approximately 8:42 A.M. I, Sergeant E. Luken conducted a cell search with Sergeant R. Yarber in cell P-303 where incarcerated individuals Huntington, Donald #885774 and Orange, Allen, #178542 reside. During the search I witnessed Sergeant Yarber discover a clear plastic trash bag with approximately 10 gallons of a red-ish orange liquid that had the smell consistent to intoxicants hidden under the lower bunk.

*Id.* at 1.

On January 12, the screening officer notified Mr. Huntington of the charges against him in Case No. WVD 23-01-0020, providing him with copies of the report of conduct and the screening report. Dkt. 9-1; 9-3. Mr.

2

Huntington waived 24-hour notice of the disciplinary hearing, pleaded not guilty, and requested a lay advocate, which was provided. Dkt. 9-3. He also requested three witnesses: Correctional Officer Angelton, Correctional Officer Rumple, and Incarcerated Individual Orange. *Id.* Mr. Huntington believed both correctional officers would say that the contraband was not his, but these requests were denied because these officers were not present at the time of the search. *Id.* Mr. Huntington believed Mr. Orange would admit the contraband was his. *Id.* After two postponements to get his statement, Mr. Orange stated, "I don't know nothing." Dkt. 9-5; dkt. 9-7.

On February 3, the hearing officer held the disciplinary hearing. Dkt. 9-6. Mr. Huntington stated, "It is not mine." *Id.* The hearing officer considered the staff reports, Mr. Huntington's statement, and the photograph and found Mr. Huntington guilty. *Id.* Among other things, the hearing officer sanctioned Mr. Huntington with a 90-day loss of earned credit time and a one-step demotion in credit class. *Id.*

Mr. Huntington appealed to the Facility Head and the Indiana Department of Correction (IDOC) Final Reviewing Authority, and both appeals were denied. Dkts. 9-8; 9-9. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. The respondent filed a return to order to show cause, dkt. 9, and Mr. Huntington did not file a reply.

3

### C.     Analysis

Mr. Huntington argues that the evidence was not sufficient to support the disciplinary conviction, that he was denied a requested witness, and that his hearing officer was not impartial.  Dkt. 1.

### 1. Sufficiency of the Evidence

Mr. Huntington argues that the liquid confiscated from the cell was not his, but belonged to his cellmate, Mr. Orange.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard.  "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."  *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board." (citation and quotation marks omitted)).  The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard.  *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).  "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455–56.

The IDOC defines code B-231 as "[m]aking, receiving, giving, transferring, trading, or in any other manner moving from one person to another, or possessing an intoxicating substance, or being under the influence of any intoxicating substance (e.g., alcohol, inhalants, or chemical-soaked paper)."  Dkt. 9-10 at 7–8.  An intoxicating substance is anything which may

4

alter or impair normal mental or physical functions. Dkt. 9-11 at 5. The IDOC defines possession, within the context of the prison's disciplinary system, as:

> On one's person, in one's quarters, in one's locker or under one's physical control. For the purposes of these procedures, an offender is presumed to be responsible for any property, prohibited property, or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control. Areas under an offender's control include, but are not limited to: the door track, window ledge, ventilation unit, plumbing and the offender's desk, cabinet/locker, shelving, storage area, bed and bedding materials in his/her housing assignment and the desk, cubicle, work station and locker in his/her work, educational or vocational assignment.

*Id.* at 6.

Here, the conduct report alone is sufficient to support that there was "some evidence" supporting the hearing officer's decision finding Mr. Huntington guilty. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). First, Mr. Huntington does not dispute that the confiscated liquid was an intoxicating substance. *See* dkt. 1. And Sergeants Yarber and Luken both noted the strong odor of alcohol associated with the contents of the bag. Dkts. 9-1; 9-2. Next, the material was found in a property box in Mr. Huntington's cell, underneath his bunk. Dkt. 9-1. Because the intoxicating substance was found in Mr. Huntington's cell, he possessed it as defined by the IDOC. Dkt. 9-11 at 6. This is the case even though Mr. Huntington had a cellmate. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) ("If . . . only two inmates had access to the vent, there is a 50% probability that each inmate is guilty; a 50% probability amounts to 'some evidence.'").

5

Because the evidence was sufficient to find Mr. Huntington guilty of possessing an intoxicating substance, he has not shown that his due process rights were violated, and he is not entitled to habeas relief on this ground.

### 2. Denial of Request to Call Witness

Mr. Huntington argues that his request to call Officer Rumple as a witness was improperly denied. According to Mr. Huntington, his cellmate admitted the substance was his and Officer Rumple "witnessed the substance was the cellmate's not Huntington['s]." Dkt. 1 at 3–4.

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals . . . ." *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (citing *Wolff*, 418 U.S. at 566). The right to call witnesses extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

The screening officer denied Mr. Huntington's request for a statement from Officer Rumple because "staff wasn't present," dkt. 9-3, meaning that Officer Rumple wasn't there when Officers Yarber and Luken conducted the search. Therefore, Officer Rumple could not testify that the allegedly

6

intoxicating substance was not recovered from Mr. Huntington's cell and any testimony that the substance belonged to Mr. Huntington's cellmate would not be exculpatory—the presence of the substance in Mr. Huntington's cell is "some evidence" that he possessed it, even if it belonged to and/or was made by his cellmate.  *See Tweedy v. Vannatta*, 101 F. App'x 158, 160 (7th Cir. 2004) (finding that video evidence of other inmates entering petitioner's cell while he was gone would not exonerate petitioner from possessing marijuana because "contraband may be constructively possessed jointly with others"); dkt. 9-11 at 6 (IDOC's definition of possession includes "in one's quarters" where an "offender is presumed to be responsible for any . . . contraband that is located . . . within their cell . . . .").  There is no suggestion that any proposed witness would have testified that the intoxicating substance was not discovered in Mr. Huntington's cell.  Accordingly, Mr. Huntington is not entitled to habeas relief on this ground.

### 3. Impartial Decisionmaker

Finally, Mr. Huntington argues that he was denied an impartial decisionmaker.  A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker.  *Hill*, 472 U.S. at 454.  A sufficiently impartial decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties.  *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam).  Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary.  *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (per curiam); *see Perotti v. Marberry*, 355 F. App'x 39,

7

43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof." *Id.* at 667.

Here, Mr. Huntington has not shown that the hearing officer was directly or substantially involved in the conduct or the investigation leading to the charge. Dkt. 1. He instead argues the hearing officer was not impartial because the hearing officer failed to obtain a witness statement from Officer Rumple, which Mr. Huntington claims would have been that his cellmate "admitted [the contraband] was his." *Id.* at 4. But an adverse decision from the hearing officer does not establish bias. *See Liteky v. United States*, 510 U.S. 540, 556 (1994). Therefore, Mr. Huntington is not entitled to relief on this claim.

### D.   Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Huntington to the relief he seeks. His petition for a writ of habeas corpus must be **denied** and the action **dismissed**.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 10/4/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

DONALD HUNTINGTON
885774
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All electronically registered counsel